IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JERRY A. GARCIA,

        **Plaintiff,**

vs.                                          No. CIV 04-1100 LCS

**JOANNE B. BARNHART,**
**Commissioner of Social Security,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse and Remand Administrative Agency Decision [Docket #11], filed February 8, 2005. The Commissioner of Social Security issued a final decision denying Plaintiff's application for disability insurance benefits. This matter comes before this Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is not well-taken and should be **DENIED**.

**I.    STANDARD OF REVIEW**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health & Human Svcs.*, 961, F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record. *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. §§ 404.1520 and 416.920. *See Rayes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See Gibson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II.      PROCEDURAL HISTORY

Plaintiff, now 48 years old, filed his application for disability insurance benefits on October 24, 2000, alleging disability commencing on August 1, 1994. (R. at 65-67). Plaintiff's alleged disability was due to a back injury causing lower back pain and numbness in the left leg. (R. at 81). Plaintiff has a 10th grade education (R. at 87) and has past relevant work in the mining and construction industries. (R. at 82).

Plaintiff's application for disability insurance benefits was denied at the initial level on

January 8, 2001 (R. at 50-53) and at the reconsideration level on March 28, 2001. (R. at 56-58). Plaintiff appealed the denial of his application by filing a Request for Hearing before Administrative Law Judge. (R. at 59-62). Attorney Gary Martone was retained by Plaintiff on March 14, 2001. (R. at 22).

The ALJ issued his decision on April 26, 2002 (R. at 10-17), analyzing Plaintiff's claim in accordance with the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability in 1994. (R. at 14). At the second step, the ALJ found that Plaintiff had an impairment or combination of impairments considered 'severe' based on the requirements of 20 C.F.R. § 404.1520(b). (Id.) The ALJ further found that Plaintiff's medically determinable impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 404.1501-1599. (R. at 14-15). The ALJ also found that Plaintiff was not fully credible regarding the extent of his limitations. (R. at 15-16). At step four, the ALJ found that Plaintiff could not return to his past relevant work, but retained the residual functional capacity ("RFC") to engage in a wide range of work at the light exertional level. (R. at 16). At step five, the ALJ found that Plaintiff was capable of adjusting to work existing in significant numbers in the national economy. (Id.) Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time during the period under review. (Id.)

On July 31, 2003 this Court granted Plaintiff's Motion to Reverse and Remand Administrative Agency Decision. (R. at 249-50). The ALJ was directed to more fully evaluate all of the medical source opinions. Specifically, the ALJ was directed to provide a rationale for the

weight given to various physicians' opinions. (Id.)

The second hearing before the ALJ was held on November 24, 2003 (R. at 268-91) and the ALJ issued his decision on April 22, 2004 (R. at 235-242), again analyzing Plaintiff's claim in accordance with the sequential analysis found in 20 C.F.R. § 404.1520(a)-(f). At step one of the evaluation, the ALJ found the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 237). At step two, the ALJ found that Plaintiff did have a combination of impairments considered 'severe' within the meaning of 20 C.F.R. § 404.1520(b), but that these impairments did not meet or equal any impairment found in the Listings, Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (Id.) The ALJ found that Plaintiff could not perform his past relevant work but that he retained a Residual Functional Capacity to perform a limited range of sedentary work. (Id.) The ALJ further found that Plaintiff was not fully credible regarding the extent of his limitations. (R. at 238). Finally, the ALJ determined that Plaintiff was capable of adjusting to work existing in significant numbers in the national economy. (R. at 241). As such, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time during the period under review. (Id.)

Plaintiff filed a Request for Review of Hearing Decision and the Appeals Council denied this request for review on August 25, 2004. (R. at 216-218). Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On September 28, 2004, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### III.  ANALYSIS AND FINDINGS

The medical records in this matter date from August, 1993 at which time Plaintiff


apparently sustained a back injury at work. (R. at 122). Mr. Garcia was evaluated shortly following this incident by Dr. Y.D. Heilbronn, who felt Plaintiff had sustained acute herniation with possible rupture of the L5-S1 disc and protrusion of the L4-5 disc. (R. at 123). Dr. Heilbronn noted Plaintiff to be in "intractable" pain and recommended timely decompression of the nerve root and removal of the offending disc. (Id.)  On August 31, 1993, Mr. Garcia underwent a left L4-5 and L5-S1 hemilaminectomy with disc removal at the L5-S1 level. (R. at 125).  Postoperative recovery was noted to have been uneventful. (Id.)

On approximately December 28, 1993 Mr. Garcia reinjured his back, again at work. (R. at 131).  Plaintiff had been cleared to return to work on November 22, 1993. (Id.) The pain was noted to be situated primarily in the lower back, with some radiation into the left posterior thigh. (Id.) Range of motion was found to be considerably limited and muscle tension and spasm was noted. (Id.) The possibility of another disc herniation was noted. (Id.)

Mr. Garcia began a program of physical therapy in January, 1994 which continued until mid-February, 1994. (R. at 138-152).  Plaintiff indicated symptoms of numbness and burning sensations and pain radiating into the left thigh. (R. at 152).  Sitting and lying down were noted to increase symptoms. (Id.)  During the course of this treatment, therapist Willie Stubblefield indicated his belief that Plaintiff was benefitting from therapy as treatment often resulted in reduced blood pressure readings, indicating lower level of pain  (R. at 138-152).  However, Plaintiff continued to complain of high levels of pain following treatment, which Mr. Stubblefield felt was inconsistent with other collected data. (R. at 141).

An MRI scan performed in February, 1994 revealed scarring about the S1 nerve root, with no large recurrent disc visible. (R. at 154).  Mild spinal stenosis was observed at L4-5 and L5-S1,

5

especially due to short pedicles, slightly overgrown facets and mild disc bulge at L4-5 and scarring at L5-S1. (Id.) Dr. Lloyd Garland's impression of this study was that further surgery would not be beneficial. (R. at 133). Dr. Garland felt that Plaintiff had reached maximum medical improvement and would be left with weakness in the back and would be at greater risk for future injuries. (Id.) Dr. Garland assessed a permanent residual impairment of approximately 8% to the body as a whole. (Id.) Mr. Garcia was advised to look for employment that did not require repetitive stooping or bending and to avoid lifting weights in excess of 50 pounds. (Id.)

A Functional Capacity Evaluation was performed in March, 1994 at the request of Dr. Garland. (R. at 155-172). It was felt that Mr. Garcia had a tendency towards symptom magnification, i.e., his pain ratings were observed to be exaggerated. (R. at 170). A continued program of strengthening exercises was recommended. (Id.) Plaintiff was advised not to return to his former work because of the possibility of re-injury. (Id.) The therapist concurred with Dr. Garland's recommendations for lifting restrictions. (Id.)

The medical record is virtually silent until October, 2000, at which time Mr. Garcia underwent a Work Activity and Disability Report. (R. at 80-97). At this time, Plaintiff continued to complain of back and left leg pain. (R. at 86). It was not observed that Mr. Garcia had difficulties in concentrating, understanding, or communicating. (R. at 92). Plaintiff indicated he would occasionally assist his wife in running her day care business. (R. at 94). Also at this time, Plaintiff was evaluated by Dr. Frank Maldonado. (R. at 210-215). Mr. Garcia indicated his back pain was worse and that he had begun experiencing knee problems. (R. at 210). He estimated that he could walk approximately one block. (Id.) Mr. Garcia indicated he was bothered by virtually all activities involving prolonged sitting or standing. (Id.) Dr. Maldonado stated the

patient appeared to be in significant distress and walked with a noticeable limp favoring the left leg.  (Id.)  Dr. Maldonado further indicated that Plaintiff could sit and/or walk between 1 to 2 hours in an 8-hour work day.  (R. at 214).  Mr. Garcia was advised not to lift weights greater than 10 pounds.  (R. at 213).  Dr. Maldonado opined that Plaintiff could never climb, balance, stoop, crouch or crawl.  (R. at 214).  He further found that Mr. Garcia should not be exposed to heights, moving machinery, or vibration.  (R. at 215).

   Mr. Garcia was also evaluated by Dr. Deborah Schenck in November and December, 2000.  (R. at 173-79).  Dr. Schenck believed Plaintiff capable of occasionally lifting 20 pounds and frequently lifting less than 10 pounds.  (R. at 173).  She did not feel that Mr. Garcia had any restrictions for sitting or standing.  (R. at 173-74).  Dr. Schenck did not feel Plaintiff was at maximum medical improvement.  (R. at 179).  She further noted that, based upon his physical exam, Plaintiff did not show evidence of a sedentary lifestyle.  (Id.)  Mr. Garcia was noted to have markedly exaggerated his symptoms, such that Dr. Schenck found it difficult to determine at what level Plaintiff could function.  (Id.)  She did feel he was able to do more activities than he stated.  (Id.)  As such, Dr. Schenck opined that Mr. Garcia would be capable of light work.  (Id.)

   A Physical Residual Functional Capacity Assessment, performed in January, 2001, indicated that Plaintiff could frequently lift 10 pounds and occasionally life 20 pounds.  (R. at 199).  Plaintiff was felt to be able to sit and/or stand for up to 6 hours during an 8-hour workday.  (Id.)  No visual, communicative, manipulative, or environmental limitations were established.  (R. at 201-202).  Mr. Garcia was felt to be able to climb, balance, stoop, or kneel occasionally.  (R. at 200).

## IV. DISCUSSION

In his Motion to Reverse and Remand Agency Decision [Docket #11], Plaintiff raises the following allegations of error at step five of the sequential evaluation:

> I. The ALJ failed to comply with the Order of Remand requiring him to provide a rationale for disregarding the opinions of Plaintiff's treating physicians.
>
> II. The jobs identified by the vocational expert ("VE") are either inconsistent with the descriptions in the DOT or do not provide a significant number of jobs to the claimant.
>
> III. The ALJ's credibility finding is not supported by substantial evidence and is contrary to law.

### a. Analysis of Treating and Consulting Physician's Opinions

Turning to Plaintiff's first allegation of error, Mr. Garcia contends that the ALJ erroneously discounted the opinion of Dr. Steve Hood, that the reasons given for discounting Dr. Maldonado's opinions were contrary to law, and that the ALJ failed to adequately explain his reasons for accepting the opinions of Dr. Schenck.

<u>Dr. Hood</u>

It is axiomatic that the ALJ must give controlling weight to the treating physician's opinion, provided that opinion is well-supported and is not inconsistent with other substantial evidence. *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001). 20 C.F.R. § 404.1527(d)(2). The Tenth Circuit has held that factors to be considered in evaluating a treating physician's opinions include the opinion's consistency with other evidence, the length of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

The record indicates that Dr. Hood examined Plaintiff in January, 1994. (R. at 131-32). Dr. Hood's examination of Plaintiff therefore occurred prior to the start of Plaintiff's alleged disability in August, 1994 and is outside the appropriate period of review. Moreover, from the record before me, it appears that Dr. Hood saw Plaintiff only once, following a back injury in December, 1993. (R. at 131-132). It is well-established that the opinions of consulting physicians are not entitled to the same weight as those of treating physicians. *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002). Because it appears from the record that Dr. Hood was a consulting rather than a treating physician and because Dr. Hood's records date from before the period under review in this matter, I find that any error stemming from the ALJ's failure to discuss Dr. Hood's conclusions was harmless and does not necessitate remand.

<u>Dr. Maldonado</u>

Plaintiff also contends that the ALJ erred in disregarding the opinions of Dr. Maldonado. As previously noted, the ALJ is required to give controlling weight to the treating physician's opinions, provided those opinions are well-supported and are not inconsistent with other substantial evidence. *White*, 287 F.3d at 907. 20 C.F.R. § 404.1527(d)(2). An ALJ may disregard the opinion of a treating physician, provided he sets forth specific, legitimate reasons why he chooses not to rely on the physician's opinions. *Langley*, 373 F.3d at 1119.

In this case, the ALJ determined that Dr. Maldonado's conclusions were not entitled to significant weight. (R. at 239). The ALJ based this finding on the fact that Dr. Maldonado's conclusions were inconsistent with the record as a whole, in that the other medical providers on record found Plaintiff's limitations to be much less severe than did Dr. Maldonado. Further, the ALJ noted that, "Dr. Maldonado relied excessively on the claimant's subjective complaints." (Id.)

It is well-established that subjective testimony alone that the claimant has symptoms cannot establish a finding of disability. *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988). Objective medical evidence must establish an impairment and statements regarding the intensity and persistence of symptoms must be consistent with the medical findings and signs. *Id.* Several health care providers asserted that Plaintiff exhibited signs of symptom magnification. (R. at 170, 179). Because the ALJ found Dr. Maldonado's opinions to be inconsistent with the record as a whole and because he set forth legitimate reasons for these findings, the ALJ acted within his discretion and his failure to credit Dr. Maldonado's opinions does not constitute reversible error. *See Langley*, 373 F.3d at 1119.

<u>Dr. Schenck</u>

Plaintiff also contends the ALJ erred in his analysis of Dr. Schenck's opinions. This argument is apparently based on the fact that Dr. Schenck did not have Plaintiff's MRI in her possession at the time of her consultation with Plaintiff. Mr. Garcia contends that because evidence exists which was not provided to the consultative examiner, the ALJ was required to consider Dr. Schenck's opinions in light of the missing evidence. SSR 96-6p. Plaintiff admits that SSR 96-6p is distinguishable from the present case because that Ruling refers to later, rather than earlier, developed evidence.

Further, despite not having access to Plaintiff's MRI, Dr. Schenck indicated that she did have access to Plaintiff's other medical records and to an x-ray dated 2-28-2000 showing disc herniation and degenerative joint disease. (R. at 179). In addition to reviewing the medical records, it is apparent that Dr. Schenck performed a clinical evaluation of Mr. Garcia's range of motion and motor skills during the consulting examination in December, 2000. (Id.) Finally, it

10

appears to the Court that the MRI scan about which Plaintiff objects was performed in February, 1994, almost seven years prior to his examination by Dr. Schenck. (R. at 154). I find therefore that the ALJ did not err in crediting the opinion of Dr. Schenck, despite the fact that she did not review Plaintiff's 1994 MRI.

### b. VE's Testimony not based on Substantial Evidence or DOT

Plaintiff's next allegation of error is that the jobs outlined by the vocational expert were either inconsistent with his level of ability, as outlined in the Dictionary of Occupational Titles ("DOT"), or do not provide a sufficient number of jobs regionally. The ALJ found that Plaintiff was capable of performing "a significant range of sedentary work." (R. at 240). At the hearing, the ALJ questioned the VE about a hypothetical individual limited to simple, routine work, having a need to change positions occasionally, limited to lifting a maximum of 10 pounds, with some postural restrictions. (R. at 284-288).

Plaintiff first alleges that the listed jobs of charge-account clerk (DOT #205.367-014) and surveillance systems monitor (DOT #379.367-010) require a reasoning level of 3 and are therefore not available to an individual limited to performing simple, routine tasks. Plaintiff's argument on this score is without merit.

I first note that Plaintiff's past relevant work required him to supervise other employees, to write and complete reports, and to use machines, tools, and equipment. (R. at 82). Further, according to the DOT, Plaintiff's past work all involved reasoning levels of either three or four.[1] The jobs enumerated by the VE require, by definition, little or no judgment and can be learned

---

[1] Winch Truck Driver, Reasoning Level 3, DOT #932.363-010; Stucco Plasterer, Reasoning Level 3, DOT #842.381-014; Roustabout, Reasoning Level 3, DOT #869.684-046; Gang Foreman, Reasoning Level 4, DOT # 862.131.022; Drill Operator, Reasoning Level 3, DOT #930.682-010.

within 30 days. *See* 20 C.F.R. § 404.1568. Finally, Plaintiff does not claim, nor has he provided any evidence to suggest, the existence of any mental impairment that would make him unable to perform jobs requiring a reasoning level of 3.

Plaintiff argues that the ALJ's limitation to "simple, routine work" indicates that he is only capable of jobs with a reasoning level of 1. As support for this contention, Plaintiff points to the recent Tenth Circuit case of *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), in which the Court found that Plaintiff's ability to perform simple and routine tasks was inconsistent with the ability to perform a job at reasoning level 3. *Hackett* is distinguishable from the present case. The Plaintiff in *Hackett* had established mental limitations which made it difficult for her to respond to changes or normal pressures in the work environment. *Id.* at 1174. Plaintiff, by contrast, claims only physical limitations. Further, although the ALJ limited Plaintiff to "simple, routine work", (R. at 240), an examination of the context of this discussion reveals that the limitation almost certainly refers to a limitation to simple and routine *physical* tasks. (Id.)

Plaintiff finally contends that the ALJ erred because there are not a sufficient number of jewelry preparer jobs in New Mexico to satisfy the requirements of step five. The VE testified that there are approximately 160 preparer jobs in New Mexico. (R. at 285). Because I have already determined that the VE did not err in finding Plaintiff capable of performing the other jobs enumerated by the VE, I need not consider this argument.

    **c.**    **Evaluation of Plaintiff's Credibility**

Finally, Plaintiff argues that the ALJ erred in finding that his allegations of disabling pain were not fully credible. When analyzing allegations of disabling pain, the ALJ must consider 1) whether Claimant has established a pain-producing impairment by objective medical evidence; 2)

if so, whether there is a loose nexus between the proven impairment and the Claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling. *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995); *see also Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987).

The ALJ found that Mr. Garcia had pain producing impairments of degenerative lumbar disc disease with recurrent disc herniation and mild degenerative arthritis of the knees. (R. at 237). He also found a connection between the impairments and Plaintiff's allegations of pain. (Id.) However, the ALJ did not find, upon considering all the evidence, that Plaintiff's pain was disabling.

Contrary to Plaintiff's assertion that the ALJ reviewed only those portions of the record most favorable to his decision, the ALJ in fact engaged in an extensive discussion of the entire record. (R. at 237-240). Plaintiff reiterates the argument that the ALJ improperly rejected the findings of Dr. Maldonado. I have already considered this argument and found that the ALJ acted within his discretion in rejecting these findings. The ALJ also discussed the numerous reports in the record of apparent symptom magnification and exaggerated pain behavior.

The Tenth Circuit generally treats credibility determinations made by an ALJ as binding upon review. *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). Further, the Court has previously stated that credibility determinations are particularly the province of the finder of fact and has declined to upset such determinations when supported by substantial evidence. *Diaz v. Sec'y of Health & Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1999). Given the numerous records which cast doubt on Plaintiff's allegations of disabling pain, I find that the ALJ's determination that Plaintiff was not fully credible was supported by substantial evidence and will

be upheld.

### V.     CONCLUSION

Upon review of the evidence presented in this Motion to Reverse and Remand, this Court has determined that the Commissioner's decision was supported by substantial evidence and that the ALJ adequately developed the record.  Accordingly, Plaintiff's Motion to Reverse and Remand is **DENIED.**

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**